**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| MICHAEL MCDONALD, Individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>JUDITH AMES PAUL, TERRANCE D. PAUL, GLENN R. JAMES, RANDALL J. ERICKSON, JOHN H. GRUNEWALD, HAROLD E. JORDAN, MARK D. MUSICK, ADDISON L. PIPER, PERMIRA ADVISERS LLC, RENAISSANCE LEARNING, INC., RAPHAEL HOLDING COMPANY, and RAPHAEL ACQUISITION CORP.,<br><br>        Defendants. | Civil Action No. 11-cv-690<br><br>**CLASS ACTION**<br><br>**SHAREHOLDER CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934 AND RULE 14a-9 OF THE US SECURITIES AND EXCHANGE COMMISSION PROMULGATED THEREUNDER** |

Plaintiff, Michael McDonald ("Plaintiff"), by and through his attorneys, alleges upon personal knowledge as to himself, and upon information and belief based upon, among other things, the investigation of counsel as to all other allegations herein, as follows:

### SUMMARY OF THE ACTION

1.     Plaintiff brings this shareholder class action both for himself and on behalf of all similarly situated public shareholders of Renaissance Learning Incorporated ("Renaissance Learning" or "Company") to enjoin the acquisition of the publicly owned shares of Renaissance Learning common stock by Raphael Holding Company

("Raphael") and its wholly-owned subsidiary, Raphael Acquisition Corp. ("Merger Sub"), as detailed herein ("Proposed Transaction"). Raphael and Merger Sub are affiliates of investment funds advised by Permira Advisers LLC (collectively referred to herein as "Permira"). This action arises out of defendants' violations of state law and Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and US Securities and Exchange Commission ("SEC") Rule 14a-9 promulgated thereunder ("Rule 14a-9").

2.      On August 16, 2011, Renaissance Learning and Permira jointly announced that they had entered into a definitive agreement pursuant to which Permira will acquire the stock of Renaissance Learning for $14.85 per share, or approximately $440 million ("Merger Agreement"). Under the terms of the transaction, Renaissance shareholders would receive $14.85 in cash per share of Renaissance common stock.

3.      However, on August 24, 2011 Renaissance Learning revealed that it had a received an unsolicited-non binding proposal from Plato Learning, Inc. ("Plato") offering to acquire the stock of Renaissance Learning for $15.50 per share in an all cash transaction ("Plato Offer"). Renaissance Learning subsequently announced on September 22, 2011 the definitive version of the Plato Offer, as well as the fact that Plato had proposed to finance the deal with $128 million in equity and $410 million in debt pursuant to signed commitment letters.

4.      Then, on September 27, 2011, Renaissance Learning and Permira jointly announced that they were amending the original Merger Agreement ("Amended Merger Agreement"), and that an affiliate of Permira would acquire all of the outstanding shares

of Renaissance Learning held by co-founders and Defendants Terrance and Judith Paul, together with affiliates and members of their family, for $15.00 per share in cash, and would acquire all other outstanding shares of Renaissance Learning for $16.60 per share in cash, for an aggregate purchase price of approximately $455 million, which was claimed to be the financial equivalent to the Plato Offer.  Defendants Terrance and Judith Paul together with affiliates and members of their family control, in the aggregate, approximately 69% of the outstanding shares of Renaissance Learning.

5.      However, on September 28, 2011, Renaissance Learning received a revised unsolicited bid from Plato pursuant to which Plato was now offering to acquire all of the outstanding shares of Renaissance Learning held by Defendants Terrance and Judith Paul, together with affiliates and members of their family, for $15.10 per share in cash, and to acquire all other outstanding shares of Renaissance Learning for $18.00 per share in cash, for an aggregate purchase price of approximately $471 million, which is financially equivalent to the acquisition of all of the outstanding shares of Renaissance Learning for $16.01 per share in cash ("Revised Plato Offer").

6.      Despite offering a higher price than Permira, the Renaissance Board of Directors ("Board" or "Individual Defendants") announced on September 28, 2011 that they had rejected the Revised Plato Offer in favor of the Amended Merger Agreement with Permira.

7.      The special meeting of shareholders is scheduled for October 17, 2011, and the transaction is expected to close in the fourth quarter 2011.

8.      The Amended Merger Agreement provides that upon approval of a majority of Renaissance shareholders, Merger Sub shall be merged with and into the Company, with Renaissance continuing as the surviving corporation and a wholly-owned subsidiary of Permira.

9.      In facilitating the acquisition of Renaissance by Permira for grossly inadequate consideration and through a flawed process, specifically, in rejecting the Revised Plato Offer, which is financially superior, each of the Defendants breached and/or aided the other Defendants' breaches of their fiduciary duties.

10.     In addition, by making misleading statements and material omissions in the Company's preliminary proxy statement dated September 1, 2011 ("Preliminary Proxy Statement"), its Definitive Proxy Statement filed on September 12, 2011 ("Definitive Proxy Statement"), and in the Definitive Additional Materials filed on October 3, 2011 ("Amended Proxy Statement") (the three 14A filings collectively referred to herein as the "Proxy Statements") Defendants violated Sections 14(a) and 20(a) of the Exchange Act. As set forth in detail below, the Proxy Statements omit material information thereby rendering shareholders unable to cast an informed vote regarding whether to approve the terms of the Proposed Transaction. For example, the Proxy Statements omit and/or misrepresents material information concerning, among other things: (a) the sales process for the Company; (b) the data and inputs underlying the financial valuation exercises that purport to support the so-called "fairness opinion" provided by Renaissance's financial advisor, Goldman Sachs, Inc. ("Goldman"); (c) details concerning Goldman's potential conflict of interest, including the amount of

compensation received for services it has provided to Permira; and (d) details on why the Board, including Defendants Terrance and Judith Paul, concluded that Permira had the superior offer when Plato's was financially superior. These omissions and misstatements constitute both a breach of the defendants' fiduciary duties to the Company and its shareholders, as well as a violation of Sections 14(a) and 20(a) of the Exchange Act. Without the omitted and materially misrepresented information, Renaissance Learning's shareholders simply cannot make a fully informed decision as to whether to vote in favor of the Proposed Transaction.

11.     To remedy defendants' breaches of fiduciary duty and other misconduct, plaintiff seeks, among other things: (a) injunctive relief preventing consummation of the Proposed Transaction unless and until the Company adopts and implements a procedure to obtain a transaction that provides the best possible terms for shareholders, and defendants disclose all material information concerning the Proposed Transaction to Renaissance Learning's shareholders; (b) a directive to the Board to exercise their fiduciary duties to obtain a transaction that is in the best interests of Renaissance Learning's shareholders; and (c) rescission of, to the extent already implemented, the Merger Agreement or any of the terms thereof.

## PARTIES

12.     Plaintiff is, and at all relevant times was, a continuous stockholder of Renaissance Learning. Plaintiff resides in Westchester County, New York.

13.     Defendant Judith Ames Paul is co-founder of the Company, has served as Vice-Chairman of the Board of Directors since 2010 and along with her husband and

family is a controlling shareholder of the Company with 69% of the outstanding stock. Upon information and belief, Defendant Paul resides in Wood County, Wisconsin.

14.     Defendant Terrance D. Paul is co-founder of the Company, has served as Chairman of the Board of Directors since 2010 and along with his wife and family is a controlling shareholder of the Company with 69% of the outstanding stock. Upon information and belief, Defendant Paul resides in Wood County, Wisconsin.

15.     Defendant Glenn R. James is Chief Executive Officer of Renaissance Learning and a Director. Upon information and belief, Defendant James resides in the State of Minnesota.

16.     Defendant Randall J. Erickson has served as a director of Renaissance since 2009. Upon information and belief, Defendant Erickson resides in Milwaukee County, Wisconsin.

17.     Defendant John H. Grunewald has served as a director of Renaissance since 1997. Upon information and belief, Defendant Grunewald resides in the State of Minnesota.

18.     Defendant Harold E. Jordan has served as a director of Renaissance since 2000. Upon information and belief, Defendant Jordan resides in Prince George's County, Maryland.

19.     Defendant Mark D. Musick has served as a director of Renaissance since 2009. Upon information and belief, Defendant Musick resides in the State of Georgia.

20.     Defendant Addison L. Piper has served as a director of Renaissance since 2001. Upon information and belief, Defendant Piper resides in the State of Minnesota.

21.     Renaissance Learning is a Wisconsin corporation with its headquarters located at 2911 Peach Street, Wisconsin Rapids, WI 54495.

22.     Defendant Raphael Holding Company is a Delaware corporation.

23.     Defendant Raphael Acquisition Corp. ("Merger Sub") is a Wisconsin corporation and an indirect wholly-owned subsidiary of Raphael Holding Company, formed solely for the purpose of entering into the Merger Agreement and consummating the Proposed Transaction, and has not conducted any business operations other than that incidental to its formation. Upon completion of the Proposed Transaction, Merger Sub will merge with and into Renaissance and Merger Sub will cease to exist as a separate corporate entity.

24.     Permira Advisers LLC, a New York limited liability company, is a private equity firm based in New York City. Raphael Holding Company and Merger Sub are affiliates of investment funds advised by Permira Advisers LLC, which directed the formation of Raphael and Merger Sub to acquire all of the outstanding shares of Renaissance Learning. Raphael Holding Company, Merger Sub, and Permira Advisers LLC are collectively referred to herein as "Permira."

25.     Non-party Plato is a Delaware corporation with its principal office located in Bloomington, Minnesota and a leading provider of high-value, comprehensive education technology solutions with a focus on learner achievement leading to academic and career success.

26.     Collectively, Renaissance, the Individual Defendants, and Permira are referred to herein as the "Defendants."

## JURISDICTION AND VENUE

27.     Jurisdiction is founded upon both federal question jurisdiction, pursuant to § 27 of the Exchange Act, as amended, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 and upon diversity jurisdiction under 28 U.S.C. §1332 because there is complete diversity between the parties, and the matter in controversy exceeds the sum or value of $75,000.  This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).

28.     Venue is proper under 28 U.S.C. §1391(b)(2) because Renaissance maintains offices in this District, and a substantial part of the events or omissions giving rise to the claim occurred in this District. Moreover, each of the Individual Defendants as Company officers and/or directors have extensive contacts within this District.

## CLASS ACTION ALLEGATIONS

29.     Plaintiff brings this action on his own behalf and as a class action pursuant to Fed. R. Civ. P. 23 on behalf of all holders of Renaissance common stock who are being and will be harmed by Defendants' actions described below ("Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with any of the Defendants.

30.     This action is properly maintainable as a class action because:

a.     The Class is so numerous that joinder of all members is impracticable. As of August 31, 2011, there were 29,363,477 shares of Renaissance common stock issued and outstanding. The actual number of public shareholders of Renaissance will be ascertained through discovery.

b.      There are questions of law and fact that are common to the Class, including:

i)      whether the Individual Defendants have breached their fiduciary duties with respect to Plaintiff and the other members of the Class in connection with the Proposed Transaction;

ii)     whether the Individual Defendants have breached their fiduciary duty to  obtain the best price available for the benefit of Plaintiff and the other members of the Class in connection with the Proposed Transaction; and

iii)    whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction complained of herein consummated.

c.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class.

d.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

f.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## FURTHER SUBSTANTIVE ALLEGATIONS

**A.      Background**

31.      Renaissance is a leading provider of technology-based school improvement and student assessment programs for K12 schools. Adopted by approximately 70,000 schools, Renaissance Learning's tools provide daily formative assessment and periodic progress-monitoring technology to enhance core curriculum, support differentiated instruction, and personalize practice in reading, writing and math. Renaissance Learning products and school improvement programs help educators make the practice component of their existing curriculum more effective by providing tools to personalize practice and easily manage the daily activities for students of all levels. As a result, teachers using Renaissance products and programs accelerate learning, get more satisfaction from teaching, and help students achieve higher test scores on state and national tests. Renaissance has seven U.S. locations and subsidiaries in Canada and the United Kingdom.

**B.      The Proposed Transaction and Competing Offers**

32.      On August 16, 2011, Permira and Renaissance issued a joint press release announcing the Proposed Transaction:

WISCONSIN RAPIDS, WI — Renaissance Learning, Inc. (Nasdaq: RLRN), a leading provider of technology-based school improvement and student assessment programs for K-12 schools, and the Permira Funds

today announced they have entered into a definitive merger agreement under which a company formed at the direction of the Permira Funds will acquire all of the outstanding shares of Renaissance Learning for $14.85 per share in cash, or approximately $440 million.

The transaction represents a premium of 26% over Renaissance Learning's closing stock price on August 15, 2011. Renaissance Learning's Board of Directors has approved the merger agreement and is recommending that shareholders adopt the merger agreement. Co-founders Terrance and Judith Paul, together with affiliates and members of their family, have agreed to vote the shares they control representing, in the aggregate, approximately 69% of the Company's outstanding shares, in favor of the transaction.

"This transaction enables Renaissance Learning to expand its impact in education in the U.S. and abroad, and represents a very positive outcome for our employees, shareholders and the schools we serve," said Terrance Paul, chairman of Renaissance Learning. "We are incredibly grateful to our employees and customers who have helped to build the company and joined us on our mission to accelerate learning." Glenn R. James, chief executive officer, added, "We are excited about our future with Permira. They share many of our values, respect our dedication to students and educators, and have the ideas, experience and global resources to assist our company in its continued aggressive growth plans."

"We are thrilled to be partnering with such a leader in education and technology," said Brian Ruder, Permira Partner and Head of the Menlo Park office. "Renaissance Learning has all of the characteristics the Permira funds seek in a growth investment – leading products, a top-tier customer base, and a world-class management team. We look forward to supporting the company as it continues to innovate and advance learning outcomes around the world."

The transaction is subject to customary closing conditions, including approval by Renaissance Learning's shareholders and clearance under the Hart-Scott-Rodino Act. The transaction is expected to close in the fourth quarter of 2011. Following completion of the transaction, Renaissance Learning will become a privately held company and its common stock will no longer be traded on the Nasdaq National Market.

Goldman Sachs & Co. acted as exclusive financial advisor to Renaissance Learning's Board of Directors. Godfrey & Kahn, S.C. acted as legal advisors to Renaissance Learning. Sidley Austin LLP acted as legal

advisors to the independent members of Renaissance Learning's Board of Directors. Mayer Brown LLP acted as legal advisors to Mr. and Mrs. Paul. Morgan Stanley & Co., LLC acted as lead financial advisor to the Permira Funds and RBC Capital Markets acted as co-advisor and is providing debt financing for the transaction. Skadden, Arps, Slate, Meagher & Flom LLP acted as legal advisor to the Permira Funds.

33.     Then, on August 24, 2011 Renaissance Learning announced it had

received an offer from Plato:

> WISCONSIN RAPIDS, WI — Renaissance Learning, Inc. (Nasdaq: RLRN), a leading provider of technology-based school improvement and student assessment programs for K-12 schools, announced today that it received an unsolicited, non-binding proposal from Plato Learning, Inc. ("Plato Learning"). The proposal contemplates the acquisition of Renaissance Learning by Plato Learning for $15.50 per share in cash. The proposal also states that it is subject to completion of due diligence and that the transaction is expected to be financed with equity from Thoma Bravo, HarbourVest Partners and JP Morgan as well as with debt.

> The Board of Directors has determined in good faith, after consultation with its financial advisor, that the Plato Learning proposal could reasonably be expected to lead to a Superior Proposal under the terms of the merger agreement entered into on August 15, 2011 with a company formed at the direction of investment funds ("Permira Funds") advised by Permira Advisers LLC. The Board of Directors expects to enter into a confidentiality agreement with Plato Learning, Thoma Bravo, HarbourVest Partners and JP Morgan and to provide information to and conduct negotiations with those parties.

> There can be no assurance that Plato Learning will be able to obtain financing for a transaction with Renaissance Learning, or on what terms such financing may be obtained, that the Plato Learning proposal will lead to a Superior Proposal, or that Renaissance Learning will enter into a definitive agreement with Plato Learning. The Board of Directors continues to recommend that shareholders vote in favor of adopting and approving the merger agreement and the transactions contemplated thereby with affiliates of the Permira Funds, pursuant to which Renaissance Learning would be acquired for $14.85 per share in cash.

> Renaissance Learning also announced that the Board of Directors received a letter from counsel to Permira Advisers LLC asserting the view that the

Plato Learning proposal does not represent a proposal that the Board of Directors could determine in good faith could reasonably be expected to lead to a Superior Proposal under the merger agreement.

34.   On September 12, 2011 Renaissance Learning filed its Definitive Proxy Statement with the SEC, and approximately ten days later, the Company issued a third press release announcing the definite terms of the Plato Offer, and that the Board would evaluate this competing proposal:

> WISCONSIN RAPIDS, WI — Renaissance Learning, Inc. (Nasdaq: RLRN), a leading provider of technology-based school improvement and student assessment programs for K-12 schools, announced today that it has received an unsolicited, definitive acquisition proposal from Plato Learning, Inc. ("Plato Learning"), which contemplates the acquisition of Renaissance Learning by Plato Learning for $15.50 per share in cash. Under the definitive proposal, the proposed acquisition would be financed with $128.0 million in equity pursuant to signed commitment letters and guarantees from funds advised by Thoma Bravo, LLC and HarbourVest Partners, LLC, as well as $410.0 million in debt pursuant to a signed commitment letter. The definitive proposal is not subject to a financing condition or further due diligence.
>
> The proposal announced today is the definitive version of Plato Learning's unsolicited, non-binding proposal described in Renaissance Learning's August 24, 2011 press release. Renaissance Learning's Board of Directors previously determined, in good faith, after consultation with its financial advisor, that the non-binding proposal could reasonably be expected to lead to a Superior Proposal under the terms of the merger agreement entered into on August 15, 2011 with a company formed at the direction of investment funds (the "Permira Funds") advised by Permira Advisers LLC. Subsequent to receiving the non-binding proposal, Renaissance Learning entered into a confidentiality agreement with Plato Learning, Thoma Bravo and HarbourVest Partners and provided information to those parties.
>
> In accordance with its fiduciary duties, Renaissance Learning's Board of Directors will give proper consideration in due course to Plato Learning's definitive acquisition proposal. In the meantime, the Board of Directors continues to recommend that shareholders vote in favor of adopting and

approving the Permira Funds merger agreement and the transactions contemplated thereby, pursuant to which Renaissance Learning would be acquired for $14.85 per share in cash. Renaissance Learning's merger agreement with affiliates of the Permira Funds is subject to adoption and approval by Renaissance Learning's shareholders at a special meeting scheduled to be held on October 17, 2011.

35.    In response to the Plato Offer, Renaissance Learning and Permira amended

the Merger Agreement, and announced the terms of the Amended Merger Agreement via

press release on September 27, 2011:

> WISCONSIN RAPIDS, WI — Renaissance Learning, Inc. (Nasdaq: RLRN), a leading provider of technology-based school improvement and student assessment programs for K-12 schools, and the Permira Funds announced today that they have entered into an amendment to the definitive merger agreement dated August 15, 2011 under which a company formed at the direction of the Permira Funds will acquire all of the outstanding shares of Renaissance Learning. The entry into the amendment to the merger agreement followed the previously announced definitive acquisition proposal received from Plato Learning, Inc. on September 21, 2011, which contemplated the acquisition of Renaissance Learning by Plato Learning for $15.50 per share in cash. Under the amended merger agreement, an affiliate of the Permira Funds will acquire all of the outstanding shares of Renaissance Learning held by co-founders Terrance and Judith Paul, together with affiliates and members of their family, for $15.00 per share in cash, and will acquire all other outstanding shares of Renaissance Learning for $16.60 per share in cash, for an aggregate purchase price of approximately $455 million, which is financially equivalent to the acquisition of all of the outstanding shares of Renaissance Learning for $15.50 per share in cash.
>
> Renaissance Learning's Board of Directors has approved and is recommending that shareholders approve and adopt the amended merger agreement at the special meeting of Renaissance Learning's shareholders. As previously announced, the special meeting is scheduled to be held on October 17, 2011. Under an amended shareholders agreement, Mr. and Mrs. Paul, together with affiliates and members of their family, have agreed to vote the shares they control representing, in the aggregate, approximately 69% of Renaissance Learning's outstanding shares, in favor of the amended merger agreement.

In connection with the amended merger agreement, Renaissance Learning will file with the SEC and furnish to Renaissance Learning's shareholders a supplement to the proxy statement previously distributed in connection with the special meeting of Renaissance Learning's shareholders. The transaction remains subject to customary closing conditions, including approval by Renaissance Learning's shareholders. As previously announced, Renaissance Learning's request for early termination of the waiting period with respect to the filings made under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, in connection with the proposed merger has been granted, and therefore such waiting period has ended.

36.   On September 28, 2011, Renaissance Learning announced Plato's revised offer, which was financially superior to the Proposed Transaction contemplated by Renaissance Learning and Permira:

WISCONSIN RAPIDS, WI— Renaissance Learning, Inc. (Nasdaq: RLRN), a leading provider of technology-based school improvement and student assessment programs for K-12 schools, announced today that it has received an unsolicited, revised definitive acquisition proposal from Plato Learning, Inc. ("Plato Learning"). Under the revised definitive proposal, Plato Learning proposed to acquire all of the outstanding shares of Renaissance Learning held by co-founders Terrance and Judith Paul, together with affiliates and members of their family, for $15.10 per share in cash, and to acquire all other outstanding shares of Renaissance Learning for $18.00 per share in cash, for an aggregate purchase price of approximately $471 million, which is financially equivalent to the acquisition of all of the outstanding shares of Renaissance Learning for $16.01 per share in cash. Under the revised definitive proposal, the proposed acquisition would be financed with $144.0 million in equity pursuant to signed commitment letters and guarantees from funds advised by Thoma Bravo, LLC and HarbourVest Partners, LLC, as well as $410.0 million in debt pursuant to a signed commitment letter. The revised definitive proposal is not subject to a financing condition or further due diligence.

The revised definitive proposal follows the announcement by Renaissance Learning and the Permira Funds on September 27, 2011 that they have entered into an amendment to the definitive merger agreement dated August 15, 2011 under which a company formed at the direction of the

Permira Funds will acquire all of the outstanding shares of Renaissance Learning. Under the amended merger agreement, an affiliate of the Permira Funds will acquire all of the outstanding shares of Renaissance Learning held by co-founders Terrance and Judith Paul, together with affiliates and members of their family, for $15.00 per share in cash, and will acquire all other outstanding shares of Renaissance Learning for $16.60 per share in cash, for an aggregate purchase price of approximately $455 million, which is financially equivalent to the acquisition of all of the outstanding shares of Renaissance Learning for $15.50 per share in cash.

The Pauls have informed Renaissance Learning's Board of Directors that they will not support an acquisition of Renaissance Learning by Plato Learning pursuant to Plato Learning's revised definitive offer. Based on this information, the Board of Directors has unanimously determined in good faith, after consultation with its financial advisor, that the revised Plato Learning proposal could not reasonably be expected to lead to a Superior Proposal under the terms of the amended merger agreement with affiliates of the Permira Funds, and that it will not pursue negotiations with Plato Learning.

Renaissance Learning's Board of Directors has approved and continues to recommend that shareholders approve and adopt the amended merger agreement with affiliates of the Permira Funds at the special meeting of Renaissance Learning's shareholders scheduled to be held on October 17, 2011. Under an amended shareholders agreement, Mr. and Mrs. Paul, together with affiliates and members of their family, have agreed to vote the shares they control representing, in the aggregate, approximately 69% of Renaissance Learning's outstanding shares, in favor of the amended merger agreement.

In connection with the amended Permira Funds merger agreement, Renaissance Learning will file with the SEC and furnish to Renaissance Learning's shareholders a supplement to the proxy statement previously distributed in connection with the special meeting of Renaissance Learning's shareholders. The transaction remains subject to customary closing conditions, including approval by Renaissance Learning's shareholders. As previously announced, Renaissance Learning's request for early termination of the waiting period with respect to the filings made under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, in connection with the proposed merger has been granted, and therefore such waiting period has ended.

37.     Despite Plato's financially superior counter-offer, the Board rejected it in favor of Permira's amended terms, and the Company filed its Amended Proxy Statement on October 3, 2011 detailing only a few reasons for rejecting the financially superior proposal, including the apparent belief by Defendants Terrance and Judith Paul that the Plato proposal would take longer to complete and allegedly have more financing risk.

**C.     The Unfair Price**

38.     As discussed herein, the $15.00 per share consideration offered for the shares held by Defendants Terrance and Judith Paul and their affiliates and family and the $16.60 per share consideration offered for all other outstanding shares in the Proposed Transaction is grossly inadequate. As demonstrated by the Revised Plato Offer, Renaissance, if properly exposed to the market for corporate control, would bring a price materially in excess of the amount offered in the Proposed Transaction, and in fact, has with the revised offer from Plato. In the offer announced on September 28, 2011, Plato offered $15.10 per share in cash for the Pauls' shares and $18.00 per share in cash for all other shares. This is over an 8% premium to the per share consideration being offered to shareholders aside from the Pauls and their family, and over a 3% premium for the total financial aggregate consideration.

**D.     The Preclusive Deal Protection Devices**

39.     Despite the unfair price, the Amended Merger Agreement has a number of provisions that makes it more difficult for another buyer to purchase the Company.

40.     Specifically, if the Company terminates the Proposed Transaction because of a superior proposal, Section 8.3 of the Merger Agreement states that Company must pay Permira $13 million.

41.     Furthermore, Section 4.3 of the Merger Agreement prohibits the Company and its agents from soliciting additional bids for the Company.

42.     Section 4.3 of the Merger Agreement also provides that the Board may only respond to an unsolicited takeover bid if failing to enter into discussions with a potential acquirer would be inconsistent with the directors' fiduciary duties. The Company also must notify Permira of the terms of any offer to purchase the Company, and is required to negotiate with Permira and revise the Merger Agreement such that any new proposal is no longer considered superior to the Proposed Transaction. While this provision has come into play with respect to the Plato Offer and revised offer, it is clear that the new proposal is financially superior to the amended terms agreed upon by Permira and Renaissance Learning.

E.      **The Misleading Proxy Statements**

43.     It is critical that the shareholders receive complete and accurate information about the Proposed Transaction. To date, defendants have failed to provide the Company's shareholders with that information. As set forth in more detail below, the Proxy Statements fail to disclose material information, including but not limited to: (a) key information about the sales process for the Company; (b) the data and inputs underlying the financial valuation exercises that purport to support the "fairness opinion" provided by Goldman; (c) details concerning Goldman's potential conflict of interest,

including the amount of compensation received for services it has provided to Permira; and (d) details on why the Renaissance Board, including Defendants Terrance and Judith Paul, concluded that Permira had the superior offer when Plato's was financially superior.

44.     The Proxy Statements fail to disclose several important details in the section entitled "Background of the Merger." For example, Defendants Terrance and Judith Paul discussed the possibility of a going private transaction in early 2010, which the Board voted against, but the Proxy does not disclose why the Board rejected it, what specific discussions were had and if any terms were proposed. (Definitive Proxy Statement, Page 11). Once discussions began concerning a possible merger with Permira, the initial meeting on February 17, 2011 was between Permira and the Pauls, but the rest of the Board was not present. (Definitive Proxy Statement, Page 11). Again, there is no information as to why only the Pauls were present on behalf of Renaissance, and there are clearly potential conflict of interest issues as they are also the controlling shareholders.

45.     The Proxy Statements also fail to disclose why the Pauls and not the entire Board met with Permira and Goldman Sachs in London on May 10, 2011 (Definitive Proxy Statement, Page 13) nor which members of management participated in various teleconferences prior throughout the course of the merger negotiations. Furthermore, the Pauls met with Permira on August 11, 2011 in Boulder, CO allegedly in their capacity as majority shareholders, but again this seems to present a conflict since they are also senior management and members of the Board. (Definitive Proxy Statement, Page 19).

46.     Moreover, the Definitive and Amended Proxy Statements state that Renaissance conducted due diligence with respect to Plato, but they do not specify what

due diligence was done or what the ultimate conclusion of that due diligence review was. The Amended Proxy only includes information about what the Pauls told the Board in their capacity as majority shareholders, and other than mentioning the break-up fee, an allegedly larger time frame in which to complete the Plato transaction, expenses and leverage concerns they then concluded that: "in their judgment the Permira transaction would be more favorable than the revised Plato Learning proposal to Renaissance's employees, the students, educators and schools Renaissance serves, and the communities in which Renaissance operates, especially Wisconsin Rapids, Wisconsin, and that in their judgment the Permira transaction would better further Renaissance's mission. Based on these factors, the Pauls, as Renaissance's majority shareholders, stated that they would not support the revised Plato Learning proposal." (Amended Proxy Statement, Page 9). There is essentially very little information on how the Pauls reached this decision.

47.    The Proxies are also lacking information with respect to what documents and information were presented to Renaissance Learning in connection with the Plato proposal or what the Board's reasons were for rejecting the Plato offers.

48.    Furthermore, no information is provided as to any possible side deals or compensation the Pauls or other Board members would receive as a result of the Permira deal that would make it a better offer than Plato's aside from the fact that the Paul family receives a new five-year license agreement as part of the Permira deal to "use certain of Renaissance's software productions and services for the internal educational use of the family and descendants of the Pauls." (Definitive Proxy Statement, Page 15).  Again, this only serves to illustrate the conflict that the Pauls had in negotiating the merger, and that

negotiations were anything but arm's-length.

49.     Moreover, although the Amended Proxy Statement includes information regarding Defendants Terrance and Judith Paul's statements to the Board and opinion that the termination fee associated with the Plato offer is troublesome, there are no concrete details or facts as to why the Board would chose a financially inferior offer. The Proxy Statements also neglect to mention why a $13 million termination fee to Plato would be troublesome but the identical fee that is included in Section 8.3 of the Merger Agreement is not troublesome. The reasons for the Board rejecting the Plato offers are arbitrary and capricious based upon the minimal disclosures in the Amended Proxy Statement.

50.     The Proxy Statements also omit a number of material facts in the section summarizing Goldman Sachs's analysis and fairness opinion. For example, it is not clear whether the Proxy contains all material information concerning: (a) the "certain financial and stock market information" that Goldman compared for Renaissance with the "similar information for certain other companies;" (b) the financial terms Goldman reviewed for "certain recent business combinations" in "other" industries besides the education industry; (c) the "other studies and analyses" performed by Goldman and the "such other factors" it considered as it "deemed appropriate," for whatever reason.

51.     The Proxy Statements also fail to disclose material information in connection with the summaries of the various Goldman analyses:

        a.     ***Selected Companies Analysis***: In Goldman's Selected Companies Analysis, the Proxy Statements fail to disclose: (i) the basis for selecting each company in the analysis; (ii) the summary statistics for each selected company; (iii) the EV/2011E

EBITDA multiple for each of the selected companies, and the mean multiple observed in the analysis; (iv) Price/2011E Earnings multiple for each of the selected companies, and the mean multiple observed in the analysis. This information is material as, without it, shareholders cannot independently evaluate whether Goldman's analysis is an adequate measure of commonly used valuation measurements of the Company compared to the selected companies.

       b.      ***Illustrative Discounted Cash Flow Analysis***: In Goldman's Illustrative Discounted Cash Flow Analysis, the Proxy Statements fail to disclose: (i) how Goldman derived the range of implied terminal EBITDA multiples (7.5x to 9.5x) used in its valuation of Renaissance; and (ii) how Goldman derived the range of discount rates (12.0% to 14.0%) used in its valuation of Renaissance. This information is material because the discounted cash flow analysis calculates the present value of the Company's future cash flows, and, without the omitted information, shareholders cannot independently assess whether Goldman's analysis as set forth in the Proxy Statements is an adequate measure of the Company's future cash flows.

       c.      ***Selected Transactions Analysis***: In Goldman's Selected Transactions Analysis, the Proxy Statements fail to disclose: (i) the basis for selecting each company in the analysis; (ii) the premiums observed for each of the selected transactions in the analysis; (iii) the transaction value for each of the selected transactions in the analysis; (iv) the EV/Forward Revenue multiple for each of the selected transactions in the analysis; and (v) the EV/Forward EBITDA multiple for each of the selected transactions in the analysis. Without this information, shareholders are unable to

fully understand how the Selected Transactions Analysis was performed and independently assess whether the analysis is an adequate measure of Renaissance Learning's true value.

d.      ***Present Value of Future Share Price Analysis***: In Goldman's Present Value of Future Share Price Analysis, the Proxy Statements fail to disclose: (i) how Goldman derived the range of future EBITDA multiples (7.5x to 9.5x) used in its analysis; (ii) how Goldman derived the range of future earnings per share multiples (14.5x to 18.5x) used in its analysis; and (iii) how Goldman derived the range of illustrative discount rates (13.0% to 15.0%) used in its analysis. This information is material in that, if provided, it would allow Renaissance Learning's shareholders to determine whether the analysis was performed properly, and in turn, what weight, if any, to place on Goldman Sachs' fairness opinion.

e.      ***Illustrative Leveraged Buyout Analysis***: In Goldman's Leveraged Buyout Analysis, the Proxy Statements fail to disclose: (i) how Goldman derived a 20.0% to 25.0% internal rate of return on equity; (ii) how Goldman derived a pro forma leverage ratio of 5.5x last twelve months Adjusted EBITDA; (iii) how Goldman derived existing cash on Renaissance's balance sheet of $17.5 million; (iv) how Goldman derived a first lien term loan of $175 million with an assumed annual internal rate of 8.75% over LIBOR with a LIBOR floor of 1.5%; (v) how Goldman derived a second lien term loan of $75 million with an assumed annual internal rate of 8.75% over LIBOR with a LIBOR floor of 1.5%; (vi) how Goldman derived approximately $28.0 million in transaction expenses; and (vii) how Goldman derived illustrative last twelve months exit EBITDA

multiples of 7.5x to 9.5x for the assumed exit at the end of 2015.

52.    The Proxy Statements fail to disclose the specific services Goldman provided to Renaissance Learning and its affiliates in the last two years, and the amount of compensation received for such services. This information is material in that it allows Renaissance Learning shareholders to determine whether Goldman might have been conflicted in any way that might impact the weight, if any, they want to give to Goldman's fairness opinion.

53.    The Proxy Statements reveal that Goldman has previously provided certain investment banking services to Permira and its affiliates. However, the Proxy Statements fail to disclose how much compensation was received for those services. The failure to disclose this information prevents shareholders from properly considering whether Goldman may have had a financial interest in ensuring the Proposed Transaction was completed on terms favorable to Permira due to their past dealings and the payments for their work. This information is thus vital for Renaissance Learning shareholders in determining what weight, if any, to place on Goldman's fairness opinion.

**F.    Public Criticism of the Defendants' Rejection of the Plato Offers**

54.    The Board's rejection of the Plato offers in favor of the financially inferior deal with Permira has garnered much criticism already. In an article published on October 4, 2011, the day after the Amended Proxy was filed, Steven Davidoff (a professor at the Michael E. Moritz College of Law at The Ohio State University) noted in THE NEW YORK TIMES some of the reasons Defendants Terrance and Judith Paul told the Board they favored the Permira deal, which are detailed above, including that the Pauls apparently

believe the Plato "proposal would take longer to complete," and that it would "allegedly have more financing risk." However, Professor Davidoff condemns this unsound reasoning: "None of these reasons are particularly compelling. Things are volatile, but the risk of a financing failure or a delay in this instance are lessened by the fact that Plato is a real company with real assets." As the article concludes, "…the Pauls appear to have no reason to support the lower Permira bid."

55.     In the article, Professor Davidoff also faulted the Board in general for their decision to support the Permira deal over the Plato offer: "The directors, however, have their own independent responsibilities to Renaissance and all of its shareholders. The board at least has a duty to inquire why this decision is being made." Similarly, an article in the WALL STREET JOURNAL published the same day criticized the process that resulted in the Board turning down the Plato offer: "an equally important doctrine is that even if there is a controlling shareholder, the directors cannot turn over control of the process. A merger agreement requires a board vote and a board recommendation and the directors must exercise their own judgment."

56.     Although the Plato offer is higher, as the TIMES article notes, there is virtually no difference between the two potential acquiring companies: "Permira is a private equity firm. Plato is a company owned by two private equity firms. It is hard to see how Renaissance can justify preferring one bid over the other."

57.     Part of the criticism that has already surfaced in response to the Board's actions is that the Pauls clearly have some potential conflict of interest, and it is the Board's fiduciary obligation to filter out these potential conflicts in order to ensure that

the best offer is being pursued in the interests of the shareholders. According to the WALL STREET JOURNAL article: "Once the Pauls put themselves in a conflict situation—by taking a lower price than the public—the board should have set up a process, to isolate the Pauls and their conflicting interests from the board process. By favoring the Permira bid, the Pauls made clear their interests were in getting that deal closed rather than obtaining a higher price. A special committee composed exclusively of independent directors could have responded to further overtures."

58.     The TIMES article ends posing several questions to the Pauls and the Board: "Do you have any side-deal arrangement here that is not being disclosed? And, if not, why are you doing this? More to the point, why are you deliberately depriving yourselves and other shareholders of millions of dollars."

## FIRST CAUSE OF ACTION

### (Brought Individually Against the Individual Defendants and Renaissance for Violation of §14(a))

59.     Plaintiff repeats and realleges each allegation set forth herein.

60.     The Individual Defendants have caused the Proxy Statements to be issued with material omissions and misleading statements.

61.     The Proxy Statements are an essential link in the accomplishment of the Proposed Transaction.

62.     In the exercise of reasonable care, the Individual Defendants should have known that the Proxy Statements are materially misleading and omit material facts that are necessary to render them non-misleading.

63.     The misrepresentations and omissions in the Proxy Statements are material to Plaintiff, and Plaintiff will be deprived of his right to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the vote by shareholders.

## SECOND CAUSE OF ACTION

### (Brought Individually Against the Individual Defendants for Violation of §20(a))

64.     Plaintiff repeats and realleges each allegation set forth herein.

65.     The Individual Defendants acted as controlling persons of Renaissance Learning within the meaning of §20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Renaissance Learning and their participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statements, they had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading.

66.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statements and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

67.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. In addition, as the Proxy

Statements set forth at length, and as described herein, the Individual Defendants were all involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statements purport to describe the various issues and information that they reviewed and considered, descriptions which must have had input from the Individual Defendants. The Proxy Statements at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of these documents.

68.     By virtue of the foregoing, the Individual Defendants have violated §20(a) of the 1934 Act.

69.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated §14(a) and SEC Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Individual Defendants are liable pursuant to §20(a) of the 1934 Act. As a direct and proximate result of the Individual Defendants' conduct, Renaissance Learning and its shareholders will be irreparably harmed.

## THIRD CAUSE OF ACTION

### (Against the Individual Defendants for Breach of Fiduciary Duties)

70.     Plaintiff repeats and realleges each allegation set forth herein.

71.     The Individual Defendants have violated fiduciary duties owed to public shareholders of Renaissance Learning.

72.     By the acts, transactions and courses of conduct alleged herein, the Individual Defendants have failed to obtain for Renaissance's public shareholders the

highest value available for Renaissance in the marketplace, specifically, by rejecting Plato's financially superior offer.

73.     As demonstrated by the allegations above, the Individual Defendants breached their fiduciary duties owed to the shareholders of Renaissance because they failed to take steps to maximize the value of Renaissance to its public shareholders in a change of control transaction.

74.     As a result of the actions of defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive the highest available value for their equity interest in Renaissance. Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the members of the Class.

75.     Plaintiff and the members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from immediate and irreparable injury, which the Individual Defendants' actions threaten to inflict.

## FOURTH CAUSE OF ACTION

### (Against Permira Advisers LLC, Raphael Holding Company, and Merger Sub for Aiding and Abetting the Individual Defendants' Breaches of Fiduciary Duty)

76.     Plaintiff repeats and realleges each allegation set forth herein.

77.     Permira Advisers LLC, Raphael Holding Company, and Merger Sub have acted and are acting with knowledge of, or with reckless disregard to, the fact that the Individual Defendants are in breach of their fiduciary duties to Renaissance Learning's

public shareholders, and has participated in such breaches of fiduciary duties.

78.     Permira Advisers LLC, Raphael Holding Company, and Merger Sub knowingly aided and abetted the Individual Defendants' wrongdoing alleged herein. In so doing, Permira Advisers LLC, Raphael Holding Company, and Merger Sub rendered substantial assistance in order to effectuate the Individual Defendants' plan to consummate the Proposed Transaction in breach of their fiduciary duties.

79.     Plaintiff has no adequate remedy at law.

## JURY DEMAND

80.     Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands relief in his favor and in favor of the Class and against Defendants as follows:

A.      Declaring that this action is properly maintainable as a Class action and certifying Plaintiff as Class representative;

B.      Enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company adopts and implements a procedure or process to obtain a merger agreement providing the best  available terms for shareholders;

C.      Rescinding, to the extent already implemented, the Proposed Transaction or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D.      Directing the Individual Defendants to account to Plaintiff and the Class for all damages suffered as a result of the wrongdoing;

E.      Directing the Individual Defendants to exercise their fiduciary duties to commence a sales process that is reasonably designed to secure the best possible consideration for, and obtain a transaction which is in the best interests of, Renaissance Learning's shareholders;

F.      Declaring that the Proxy Statements are materially misleading and contains omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

G.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

H.      Granting such other and further equitable relief as this Court may deem just and proper.

Dated: October 7, 2011                    Respectfully submitted,

                                          O'NEIL, CANNON, HOLLMAN, DEJONG
                                           & LAING S.C.

                                             /s/   Patrick G. McBride
                                          Patrick G. McBride, #1024920
                                          111 East Wisconsin Avenue, Suite 1400
                                          Milwaukee, WI 53202
                                          Telephone: (414) 276-5000
                                          Facsimile:  (414) 276-6581

                                          BROWER PIVEN
                                          A Professional Corporation
                                          David A.P. Brower
                                          Brian C. Kerr
                                          488 Madison Avenue, Eighth Floor
                                          New York, NY 10022
                                          Telephone: (212) 501-9000
                                          Facsimile:  (212) 501-0300
                                          *Attorneys for Plaintiff*